UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:20-cv-24386-RAR/Becerra

CARRINGTON KENNETH MOSLEY,

    Plaintiff,

v.

UNITED STATES OF AMERICA.
_____/

**REPORT AND RECOMMENDATION ON
PETITIONER'S MOTION UNDER 28 U.S.C § 2255[1]**

**THIS CAUSE** came before the Court upon Petitioner Carrington Kenneth Mosley's ("Petitioner") *pro se* Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence. ECF No. [7]. The United States of America (the "Government") filed a Response in Opposition, ECF No. [10], and Supplemental Exhibits, ECF No. [12]. Petitioner filed a *pro se* Reply. ECF No. [11]. Subsequently, the undersigned appointed counsel to represent Petitioner in these proceedings. ECF No. [15]. On April 11, 2022, the Parties appeared for a hearing before the undersigned. ECF No. [25]. Upon due consideration, it is hereby **RECOMMENDED** that Petitioner's Motion be **DENIED**.

    **I.**    **BACKRGROUND**

On December 14, 2018, a federal grand jury sitting in this District returned a six-count Indictment, charging Petitioner and his four co-defendants with various narcotics offenses. *See* Indictment, *United States v. Mosley*, No. 1:18-cr-20963-RAR (S.D. Fla. Dec. 17, 2018), ECF No.

---

[1] This matter was referred to the undersigned by the Honorable Rodolfo A. Ruiz, United States District Judge. ECF No. [9].

[3].[2] Specifically, Petitioner was charged with: (1) one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of Title 21, United States Code, Section 841(a)(1) (Count I); (2) possession of a firearm in furtherance of a drug crime in violation of Title 21, United States Code, Section 846 (Count V); and (3) possession of a firearm by a convicted felon in violation Title 18, United States Code, Section 922(g)(1) and (3) (Count VI). *Id.*

Count I carried a mandatory minimum of ten years imprisonment and a maximum of life imprisonment. ECF No. [10] at 7. Count V carried a mandatory minimum of five years imprisonment and a maximum of life imprisonment to run consecutive to any other sentence. ECF No. [12-1] ¶ 4. Count VI carried a maximum of ten years imprisonment. Criminal ECF No. [3] at 9. In short, if convicted of the three counts, Petitioner faced a mandatory minimum of fifteen years imprisonment and a possible maximum sentence of life imprisonment.

### A. The Plea Agreement

On September 11, 2019, Petitioner and the Government entered into a Plea Agreement. Criminal ECF No. [76]. As part of the Plea Agreement, Petitioner agreed to plead guilty to the lesser included offense as to Count I of conspiracy to possess with intent to distribute a detectable amount of cocaine, and to Count V. *Id.* ¶ 1. In exchange, the Government agreed to seek dismissal of Count VI. *Id.* ¶ 2. Pertinent here, the Plea Agreement contains the following appellate waiver:

> The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant

---

[2] References to the electronic docket in Petitioner's underlying criminal case are cited as "Criminal ECF No. [ ]."

>further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.

*Id.* ¶ 11.

As part of the Rule 11 plea colloquy, Petitioner affirmed that he received a copy of the Indictment, that he fully discussed the charges and defense strategies with his counsel, and that he was satisfied with counsel's representation. Criminal ECF No. [156] at 5:7–8:8. Petitioner also stated that he had the opportunity to discuss the contents of the Plea Agreement with his counsel and that he understood the Plea Agreement in its entirety. *Id.* at 9:24–10:5. As to the appellate waiver, Petitioner specifically stated he understood that: (1) Federal law gave him the right to appeal his sentence; (2) he would only be released from the appellate waiver if the Government appealed or if the sentence imposed resulted in an upward departure or upward variance in the advisory guidelines range; and (3) waiving his right to appeal was the best decision in his case. *Id.* at 13:6–14:7. Petitioner also affirmed to the Court that his counsel answered all of his questions regarding the appellate waiver and that he believed it was appropriate in his case. *Id.* at 14:7–23. The District Court then determined that Petitioner's waiver was knowing, intelligent, and voluntary and made upon the advice of effective and competent counsel. *Id.* at 14:24–15:10. Ultimately, the District Court accepted Petitioner's guilty plea, finding that Petitioner was "fully competent and capable of entering an informed plea," was "aware of the nature of the charges and the consequences of the plea," and that the plea was "knowing, intelligent a voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." *Id.* at 23:16–24:9.

3

### B. Sentencing

After Petitioner's guilty plea, a Pre-Sentence Investigation Report ("PSI") was prepared. Criminal ECF No. [100]. The PSI concluded that a sentence of up to twenty years of imprisonment could be imposed as to the lesser included offense for Count I, and that it did not carry any mandatory minimum sentence. *Id.* ¶ 108. The PSI also concluded that a consecutive, mandatory minimum sentence of five years up to life imprisonment could be imposed as to Count V. *Id.* Thus, based on Petitioner's total offense level twenty-six and criminal history category of III, the guideline range was seventy-eight to ninety-seven months as to Count I with a consecutive term of imprisonment of at least five years as to Count V. *Id.* ¶ 109. Although the Government agreed to recommend a reduction in the guideline range for Petitioner's acceptance of responsibility, the PSI did not recommend the adjustment because Petitioner continued to test positive for cocaine while on bond. *Id.* ¶ 111.

Petitioner filed his Objections to the PSI. Criminal ECF No. [104]. First, Petitioner noted that he submitted an acceptance of responsibility statement after the PSI was submitted, and as such, the adjustment should be recommended. *Id.* at 1. Second, Petitioner stated that he should not be deprived of the acceptance of responsibility adjustment based on his drug use because he suffers from drug addiction and has taken steps to improve his drug issues. *Id.* at 1–2. Third, Petitioner argued that two prior misdemeanor marijuana offenses should not increase his criminal history category from II to III. *Id.* at 2. Fourth, Petitioner argued that the PSI failed to reflect his attempt to enroll in drug treatment. *Id.* Thus, when accounting for the acceptance of responsibility adjustment and reduced criminal history category, Petitioner argued that his guideline range should be fifty-one to sixty-three months. *Id.* at 3.

On November 14, 2019, an Addendum to the PSI was submitted. Criminal ECF No. [116].

The Addendum concluded that Petitioner should not be entitled to an adjustment for acceptance of responsibility based on his continued drug use while on bond. *Id.* at 2. The Addendum further stated that Petitioner's criminal history category was correctly calculated to include all prior admissions of guilt and pleas of nolo contendere. *Id.* at 3. Finally, the Addendum concluded that Petitioner's acceptance of responsibility statement and attempt to enroll in drug treatment did not affect the PSI's guideline calculations. *Id.* at 2–3.

At the sentencing hearing, the District Court noted that the PSI set forth a guideline range of seventy-eight to ninety-seven months imprisonment as to Count I in addition to a mandatory consecutive term of sixty months imprisonment as to Count V, for a minimum of 138 months imprisonment. Criminal ECF No. [157] at 3:7–12. The Court granted a three-point downward adjustment for acceptance of responsibility because it found that Petitioner had shown remorse. *Id.* at 7:3–8:6. Thus, Petitioner's base offense level was adjusted from twenty-six to twenty-three resulting in a guideline range of fifty-seven to seventy-one months as to Count I in addition to a mandatory sixty months as to Count V, for a minimum of 117 months imprisonment. *Id.* at 8:7–14. In addition, the District Court concluded that the PSI correctly calculated the criminal history category to include diversionary dispositions. *Id.* at 11:10–15.

After considering the Section 3553(a) factors, the District Court concluded that a downward variance was warranted. *Id.* at 26:6–12. Specifically, as to Count I, the Court concluded that a sentence below the guideline range of fifty-seven and seventy-one months was warranted because Petitioner's criminal history was overstated, Petitioner was remorseful, Petitioner attempted to make an honest living, and Petitioner had a support system. *Id.* at 27:1–28:3. Accordingly, the Court imposed a forty-month sentence as to Count I plus a consecutive sixty months as to Count V–the mandatory minimum as to that Count–for a total of 100 months

imprisonment. *Id.* at 28:14–18. The Court informed Petitioner that he had the right to appeal his sentence and that a notice of appeal had to be filed within fourteen days of the entry of the judgment. *Id.* at 31:2–5. On the same day, the Judgment was entered. Criminal ECF No. [143].

Petitioner did not appeal his sentence. Instead, nine months later, on September 17, 2020, Petitioner filed a letter asking for an abatement of his sentence or downward departure based on his cooperation with the Government and his willingness to continue cooperating. ECF No. [153]. On September 29, 2020, the District Court denied Petitioner's request based on Petitioner's failure to provide any legally cognizable basis for the relief sought. ECF No. [154].

### C. The Instant Motion

On November 25, 2020, Petitioner filed the instant Amended Motion. ECF No. [7]. Petitioner argues that he received ineffective assistance of counsel because his lawyer gave him "inadequate advice concerning the benefits and detriments of filing a direct appeal." *Id.* at 7. Specifically, Petitioner states that, at sentencing, he "did not understand how he was sentenced to more time than his attorney told him" and "to more time than his co-defendants." *Id.* at 16. Petitioner states that he told counsel "that he did not like the 100 month sentence," that the sentence was "unfair and should be lower." *Id.* Petitioner argues that he expected a seventy-two-month sentence and that he would have proceeded to trial if he knew he was facing a 100-month sentence. *Id.* Petitioner states that when counsel told him that the only option was to file a direct appeal, he ordered his attorney to file the appeal. *Id.* Petitioner argues that counsel failed to follow his instructions regarding filing the appeal. *Id.*

In its Response, the Government states that Petitioner's never asked his counsel, Khurrum Wahid, to file a direct appeal. ECF No. [10] at 6–7. The Government notes that Petitioner and Mr. Wahid had conversations about the decisions of proceeding to trial or pleading guilty. *Id.* In

6

doing so, the Government states that Petitioner and Mr. Wahid discussed the evidence against Petitioner, the plea proposal, and the sentencing exposure. *Id.* at 7. The Government states that the record shows that Petitioner and Mr. Wahid also discussed the appellate waiver and agreed that pleading guilty was in Petitioner's best interest. *Id.* Moreover, the Government contends that, prior to sentencing, Petitioner and Mr. Wahid reviewed the PSI, the estimated guideline range, and the estimated sentence, and agreed upon the arguments to make at sentencing. *Id.*

In addition, the Government argues that Petitioner's assertions are contradicted not only by Mr. Wahid's statements but also by the facts of the case. Specifically, the Government argues that no rational defendant in Petitioner's place would have appealed the sentence in this case because it was below the advisory guideline range. *Id.* at 7–8. The Government notes that the PSI indicated a guideline range of seventy-eight to ninety-seven months imprisonment only as to Count I, and Petitioner received a sentence of forty months imprisonment as to this Count–thirty-eight months below the low end of the guideline range. *Id.* at 7. Moreover, the Government notes that if Petitioner had gone to trial, he was facing a statutory-minimum sentence of ten years imprisonment as to Count I, and a statutory-minimum sentence of five years imprisonment as to Count V. *Id.* As such, the Government submits that Petitioner's sentence below the advisory guideline range was a significant benefit for pleading guilty. *Id.* at 7–8.

In support of the Response, the Government submitted Mr. Wahid's Affidavit. ECF No. [12-1]. Mr. Wahid stated that he met with Petitioner on multiple occasions to discuss the discovery produced by the Government, the evidence against him, and the option of proceeding to trial or pleading guilty. *Id.* ¶ 3. Mr. Wahid stated that Petitioner was also debriefed by the Government in the hopes of providing assistance in exchange for a possible sentence reduction. *Id.* Mr. Wahid noted that the Government extended a plea offer, which would allow Petitioner to plead guilty to

the lesser included offense of conspiracy to possess with intent to distribute cocaine as to Count I, would eliminate the mandatory minimum sentence as to Count I, and would reduce the statutory maximum to twenty years imprisonment as to Count I. *Id.* ¶ 4. Mr. Wahid stated that the plea offer required Petitioner to plead guilty to Count V, which carried a statutory minimum sentence of five years imprisonment. *Id.* Mr. Wahid affirmws that he discussed plea agreement's appellate waiver with Petitioner and that Petitioner understood the terms of the appellate waiver. *Id.* ¶ 5. Mr. Wahid stated that after Petitioner plead guilty, they met to discuss the PSI and his potential sentence. *Id.* ¶ 6. Mr. Wahid further stated that he does not recall Petitioner ever asking him to file a direct appeal and that he does not have any e-mails from Petitioner requesting one. *Id.* ¶ 6.

In his Reply, Petitioner argues that Mr. Wahid's inability to recall the instruction to file a direct appeal does not defeat the instant Motion. ECF No. [11] at 2. Petitioner insists that because Mr. Wahid did not properly discuss his appellate right and did not file a direct appeal as instructed, Mr. Wahid's assistance was ineffective. *Id.*

### D. The Evidentiary Hearing

On April 11, 2022, the Parties appeared for an evidentiary hearing on this matter. ECF No. [25]. Petitioner testified that although he reviewed the plea agreement with Mr. Wahid, he did not understand the full scope of the agreement or the consequences of waiving his appellate rights. Petitioner stated that he was dissatisfied with the length of the sentence imposed because he believed the sentence would be significantly shorter. Petitioner testified that he immediately turned to Mr. Wahid when they were in the courtroom and instructed him to file a direct appeal. Petitioner stated that, at that point, Mr. Wahid stood up to declare the intention to file a direct appeal but sat back down. Petitioner testified that, upon sitting down, Mr. Wahid informed him that he had waived his right to appeal. Petitioner stated that upon the conclusion of sentencing, he

was remanded into custody, and he never spoke to Mr. Wahid again. Petitioner stated that if he had been informed of the ramifications of waiving his right to appeal, he would have never accepted the guilty plea.

Mr. Wahid also testified at the hearing. Mr. Wahid stated that he reviewed the plea agreement and stipulated factual proffer with Petitioner. Specifically, Mr. Wahid testified that he read each provision out loud and then explained their meaning to Petitioner. Mr. Wahid attested that he explained the appellate provision to Petitioner, specifically noting that he could only file an appeal in limited circumstances. Mr. Wahid stated that he was surprised by the PSI because it contained a better-than-expected score calculation. Mr. Wahid testified that he met Petitioner to discuss tactics for seeking the lowest possible sentence. Mr. Wahid stated that he does not recall Petitioner instructing him to file an appeal and that at the sentencing hearing, he stood up to request self-surrender but sat back down when he realized that the District Court was requiring immediate detention based on Petitioner's supervised release violations.

Mr. Wahid stated that he is certain that Petitioner did not instruct him to appeal because he would have unequivocally complied with those instructions under all circumstances, including in those instances in which a defendant agrees to an appellate waiver. Mr. Wahid testified that he did not visit Petitioner after the sentencing hearing because he fell ill. Mr. Wahid stated, however, that he contacted Petitioner's wife and that she never indicated any desire by Petitioner to file an appeal. Mr. Wahid further stated that Petitioner never contacted him by e-mail, or otherwise, to instruct him to file an appeal.

## II.   ANALYSIS

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court that imposed the sentence to vacate, set aside or correct the sentence if it was imposed in violation of

federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*. To obtain this relief, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI. A claim for ineffective assistance of counsel, including those that challenge guilty pleas, is subject to the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (noting that the two-part standard set forth in *Strickland* applies to guilty plea challenges based on ineffective assistance of counsel). Specifically, *Strickland* requires that a criminal defendant show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687–88).

As to the first prong, deficient performance is performance that falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. That is, actions that "no competent counsel would have taken." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted) (citing *Holladay v. Haley*, 209 F.3d 1243, 1253 n.6 (11th Cir. 2000)). However, in proving that counsel's actions were deficient, "the defendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To that extent, "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. *Chandler*, 218 F.3d at 1316 (footnote omitted) (citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998)); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. Within the context of pleas, the defendant must demonstrate that but for counsel's constitutionally ineffective performance, the defendant "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one. *Strickland*, 466 U.S. at 697. The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." *Chandler*, 218 F.3d at 1313 (alteration omitted) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)). The burden of persuasion on the petitioner is preponderance of the evidence. *Id.*

At the evidentiary hearing, Petitioner agreed that the sole issue before the Court is whether

11

counsel disregarded his request to file an appeal. In *Roe v. Flores-Ortega*, the Supreme Court established the "framework for evaluating an ineffective assistance of counsel claim, based on counsel's failure to file a notice of appeal without [the defendant]'s consent." 528 U.S. 470, 473 (2000). The Court noted the general rule that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 478 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)); *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005) (noting the "well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se"). Thus, when the defendant instructs his attorney to file an appeal, it is presumed that the defendant "reasonably relies upon counsel to file the necessary notice" and "[c]ounsel's failure to do so cannot be considered a strategic decision [because] filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. However, if a defendant did not instruct counsel to file a direct appeal, counsel is still required "to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Thus, counsel is required to "advis[e] the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Id.* at 471.

As noted above, Petitioner testified at the evidentiary hearing that although Mr. Wahid explained the provisions of the Plea Agreement, he did not understand the implications of the appellate waiver and that in any event he directed counsel to file an appeal, which counsel failed to do. In addition, Petitioner testified that based on Mr. Wahid's representations, he expected that

the District Court would impose a total sentence of up to seventy-eight months imprisonment. Petitioner testified that he instructed Mr. Wahid to file a direct appeal immediately after the District Court announced his sentence while they were sitting at counsel table. Petitioner stated that this was the only time he instructed Mr. Wahid to file a direct appeal.

In contrast, Mr. Wahid testified that he met with Petitioner in person to discuss the Plea Agreement and explained the sentencing implications of the Agreement, including that Petitioner would no longer face a minimum mandatory sentence by pleading guilty to a lesser included offense as to Count I, and that he would only face a minimum mandatory sentence as to Count V. Mr. Wahid testified that he also explained to Petitioner his right to appeal, and the significance of the appellate waiver contained in the Plea Agreement. Mr. Wahid testified that he also met with Petitioner to discuss the PSI's guideline calculations. Mr. Wahid stated that he was surprised by the PSI's calculations because he believed they would be higher. Mr. Wahid testified that Petitioner was upset by the guideline calculations, particularly the mandatory minimum sentence as to Count V. Mr. Wahid testified that he discussed sentencing strategies with Petitioner, and they agreed that the best course of action was to seek the lowest possible sentence as to Count I, which included requesting a downward departure.

As to the issue at hand here, Mr. Wahid testified that Petitioner never instructed him to file a direct appeal. Mr. Wahid stated that he would have filed an appeal without any hesitation despite the appellate waiver because it is his practice to do so upon a defendant's request. Mr. Wahid testified that he has filed direct appeals in various other cases despite the existence of appellate waivers because he endeavors to closely follow the instructions given by criminal defendants, despite recognizing that the appellate arguments may ultimately fail. Mr Wahid testified that he was unable to visit Petitioner after sentencing because he fell ill, but that neither Petitioner nor any

members of his family ever expressed a desire to appeal.

Because Petitioner and Mr. Wahid's testimony at the evidentiary hearing conflict, the Court must make credibility determinations while considering the record as a whole. *See Carr v. Schofield*, 364 F.3d 1246, 1264–65 (11th Cir. 2004) (noting that, within the context of habeas petitions, credibility determinations are "within the province of the district court, which has the opportunity to observe and study the witness") (citing *Cave v. Singletary*, 971 F.2d 1513, 1518 (11th Cir. 1992)). The undersigned credits Mr. Wahid's testimony that Petitioner did not instruct him to file a direct appeal and discredits Petitioner's testimony to the contrary.

First, Petitioner and Mr. Wahid met multiple times to discuss the Plea Agreement and the sentencing ramifications. As Mr. Wahid's testimony corroborates, he met with Petitioner prior to the execution of the Plea Agreement to explain the sentencing guidelines for each count and discuss the possible sentence Petitioner faced if he pled guilty. At the change of plea hearing, Petitioner affirmed that he and counsel discussed each Count of the Indictment, the Plea Agreement in its entirety, and the sentencing implications of the Plea Agreement. ECF No. [12-2] at 5:7–6:8, 11:16–25. Indeed, such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."). As such, Petitioner's claim that he did not understand the Plea Agreement is not credible.

Second, at the change of plea hearing, Petitioner stated he understood that by entering into the Plea Agreement, he was waiving the right to appeal his sentence. ECF No. [12-2] at 13:2–9. Petitioner stated he understood that he would only be absolved of the appellate waiver if the Government appealed, if his sentence exceeded the statutory maximum, or if his sentence was the

result of an upward departure or upward variance from the guideline range. *Id.* at 13:10–25. Petitioner affirmed that he fully discussed the appellate waiver with his counsel, including the costs and benefits of waiving his right to appeal. *Id.* at 14:1–11. Given the waiver and the fact that he understood it, Petitioner's claim that he wanted to appeal a sentence that was more favorable than expected is not credible. Indeed, the Plea Agreement afforded Petitioner the opportunity to receive a sentence shorter than expected because it enabled Petitioner to plead guilty to a lesser included offense for Count I, thereby eliminating a ten-year statutory minimum. This gave Petitioner the opportunity to seek a downward variance as to Count I, and ultimately receive a sentence below the guidelines as to that Count. As such, the facts and circumstances surrounding Petitioner's guilty plea corroborate Mr. Wahid's testimony regarding his discussions with Petitioner and Petitioner's sentiments regarding the Plea Agreement.

Finally, the Court credits Mr. Wahid's testimony that Petitioner never instructed him to file a direct appeal. At the conclusion of the sentencing hearing, the District Court informed Petitioner that he had the right to appeal his sentence and that a notice of appeal had to be filed within fourteen days. ECF No. [12-3] at 31:2–5. There is no evidence, other than Petitioner's after the fact statements, that he wanted to file an appeal. Moreover, because Mr. Wahid would have unequivocally filed the appeal had Petitioner asked him to do so, his testimony that he was not asked to appeal is simply more credible than Petitioner's statements now, which have no support in the record and are clearly self-serving. Indeed, none of the post-sentence motions filed by Petitioner mention that Mr. Wahid failed to file an appeal upon any instruction by Petitioner. *See* Criminal ECF Nos. [153], [158].

As noted above, the Court finds Petitioner's testimony not credible. Instead, Petitioner's testimony at the evidentiary hearing establishes that he understood the appellate waiver, thereby

15

making it unlikely that he would have requested that Mr. Wahid file an appeal. Petitioner's ineffective assistance of counsel claim fails because the evidence on the record established that Petitioner never asked Mr. Wahid to file a direct appeal.

### III. CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, it is recommended that no Certificate of Appealability issue. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000) and *Wilkinson v. Dotson*, 544 U.S. 74, 78–83 (2005)). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Upon consideration of the record, this Court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the District Judge pursuant to the Objections section below.

### IV. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Petitioner's Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence, ECF No. [7], be

**DENIED** and that no certificate of appealability issue.

## V. OBJECTIONS

Petitioner may file written objections, if any, to this Report and Recommendation with the District Court, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on May 11, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**